401 F.2d 9
 UNITED STATES of America ex rel. William PERKINS, Petitioner-Appellant,
v.
Frank PATE, Warden of the Illinois State Penitentiary,
Respondent-Appellee.
UNITED STATES of America ex rel. Allen GOLSON, Petitioner-Appellant,
v.
Frank PATE, Warden of the Illinois State Penitentiary,
Respondent-Appellee.
 No. 16379.
 United States Court of Appeals Seventh Circuit.
 July 5, 1968, Rehearing Denied En Banc Oct. 9, 1968.
 
 C. Richard Johnson, James E. Knox, Jr., Chicago, Ill., for appellants.
 Robert F. Nix, William G. Clark, Atty. Gen., Chicago, Ill., for appellee.
 Before SCHNACKENBERG, KILEY and FAIRCHILD, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 William Perkins and Allen Golson, petitioners, appeal from an order of the United States District Court for the Northern District of Illinois, Eastern Division, denying their applications for writs of habeas corpus directed to Frank Pate, Warden of the Illinois State Penitentiary.
 
 
 2
 Following a trial by jury in the Circuit Court of Cook County, Illinois, on an indictment charging petitioners with the murders of United States postoffice inspectors John McAuliffe and Benedetto Spizzirri, Perkins was sentenced to imprisonment for life and Golson to a term of 50 years.[1] The convictions of the present petitioners raised identical issues upon the same facts and were consolidated for adjudication.
 
 
 3
 The convictions of Perkins and Golson for the murder of McAuliffe were affirmed by the Illinois Supreme Court but the convictions for the murder of Spizzirri were reversed, People v. Golson, 32 Ill.2d 398, 207 N.E.2d 68 (1965), because defendants had already been tried for identical misconduct in the McAuliffe prosecution.
 
 
 4
 The United States Supreme Court refused certiorari. 384 U.S. 1023, 86 S.Ct. 1951, 16 L.Ed.2d 1026, 385 U.S. 892, 87 S.Ct. 21, 17 L.Ed.2d 125 (1966).
 
 
 5
 There was no evidentiary hearing in the habeas corpus case in the district court and the record is in the same form now as when presented to the Illinois Supreme Court and the United States Supreme Court.
 
 
 6
 The district court held that petitioners were not being held in custody in violation of the federal constitution. In rejecting that claim it held that petitioners had not been denied a fundamentally fair trial and that they had not been deprived of any rights secured to them by the federal constitution.
 
 
 7
 The now pertinent facts may be found in the opinion of the Illinois Supreme Court, People v. Golson (1965) 32 Ill.2d 398, which said at 403-404, 207 N.E.2d 68 which said at 71:
 
 
 8
 'About two weeks before the murders Wilson had bought a gun and shortly before the crimes Wilson, in the company of Perkins and Golson, bought a clip for the gun. On the night of the crimes the 3 men set out in a car jointly owned by Perkins and Wilson with the intention of stealing from automobiles. Wilson put the gun under the dashboard. They did not find any autos to rob and drove around looking for something else to steal. One of the men said that he had seen some boxes on a loading dock and, after circling the dock three times in the car they stopped and Wilson and Golson each took a mail sack from the dock and placed them in the car. They had only driven a short distance from the dock when two postal inspectors drove up beside them and ordered them to stop. One of the inspectors was armed with a gun. The inspectors looked in the back seat of the car and saw the mail sacks and told the three men to get out. They leaned them up against a railing and searched them, following which the three men and the two postal inspectors got into the inspectors' car and drove around the corner where they stopped. One of the inspectors asked Wilson to get out of the car and help him start Wilson's car. When Wilson got into his car he retrieved the gun from its hiding place under the dashboard and hid it on his person. He helped the inspector move the mail bags into the inspectors' car and then got in the back seat of the inspectors' car with the other two defendants. According to Perkins he then heard a click and saw that Wilson had the gun in his hand. Perkins said 'No', but Wilson started shooting. According to Golson, when he heard the gun click he said to Wilson, 'Please don't do this. Let him take us to jail.' In the statement Wilson said that he raised the gun and pulled the slide back so as to cock it and pointed the gun at the inspectors and told them to be still. One of the inspectors eased his hand out of his pocket and the other inspector turned around and hit at Wilson's gun and Wilson started shooting.'
 
 
 9
 At 408, the Illinois Supreme Court, at 74 of 207 N.E.2d, said:
 
 
 10
 '* * * In the present case the evidence showed that all three men had participated in the purchase of a clip for Wilson's gun and that they all knew that Wilson had secreted the gun in the car before they embarked on their illicit scheme. The postal inspectors were shot a short distance from the scene of the theft while the conspirators were attempting to escape from that scene. There is sufficient evidence from which the jury could infer that the conspirators intended to forcibly resist any attempt to arrest them, either during the course of the crime or in an attempt to escape from the scene. Such a plan comes within the doctrine of felony-murder, since it was contemplated that violence might be necessary to enable the conspirators to carry out their common purpose.'
 
 
 11
 The district court found that petitioners had exhausted available state remedies and that therefore it had jurisdiction over the case. It upheld the conviction on the basis of the evidence.
 
 
 12
 1. The district court discerned the purport of Illinois law as applied to this case, and said:
 
 
 13
 'Here the record discloses that petitioners knew of the presence of Wilson's loaded gun, and from this fact follows the necessary inference that petitioners and Wilson intended to use the gun to accomplish their objective or to prevent apprehension.'
 
 
 14
 We agree that that inference is necessary. Further we hold that it is consonant with the Illinois law as announced by its highest tribunal in the foregoing quotations. We consider the impact of the state court's rulings on instructions only as they are alleged to have infringed the federal constitutional rights of petitioners. For the reasons indicated we find no such infraction of those rights.
 
 
 15
 2. In their brief in this court petitioners, under the assertion 'Petitioners Were Denied Their Sixth Amendment Right to Trial by Jury', cite numerous decisions dealing with the various aspects of jury trials in criminal cases in federal courts. Their reasoning is not entirely clear. For instance, it is asserted that right to trial by jury provided for by the sixth amendment, as recognized in Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946), must be honored in Illinois trials by virtue of the fourteenth amendment to the federal constitution. Numerous other holdings by the Supreme Court are cited to the same effect. With none of these citations do we have any difference of opinion. In deciding any case at bar, this court is on the alert to protect the federal constitutional rights of any litigant, including petitioners here. This opinion is a step in that process.
 
 
 16
 For the reasons cited, the order, from which this appeal was taken, is affirmed.
 
 
 17
 Order affirmed.
 
 
 18
 FAIRCHILD, Circuit Judge (concurring).
 
 
 19
 Although I concur in affirmance, I agree with Judge Kiley that a factual issue, critical under the Illinois law of felony murder was withdrawn from the jury, and, in effect, decided by the Supreme Court of Illinois, namely the question whether the petitioners contemplated that violence might be necessary to enable them to carry out the mail theft.
 
 
 20
 The issue here is whether the petitioners were thus denied a federal right to trial by jury. Recently the Supreme Court of the United States has ruled that the Fourteenth Amendment 'guarantees a right of jury trial in all criminal cases which-- were they to be tried in a federal court-- would come within the Sixth Amendment's guarantee.'[1] However, this holding has been held to apply only prospectively. The Supreme Court has said 'we will not reverse state convictions for failure to grant jury trials begun prior to May 20, 1968.'-- the date of the Duncan and Bloom decisions.[2] In a companion case, also dismissed, Carcerano v. Gladden, 392 U.S. 631, 88 S.Ct. 2093, the question was whether the federal unanimous verdict rule should be applied to state criminal trials because of the rule of Duncan. I think De Stefano precludes us from deciding whether the rule of Bollenbach v. United States[3] applies to state criminal trials begun prior to May 20, 1968.
 
 
 21
 KILEY, Circuit Judge (dissenting).
 
 
 22
 I dissent, because I think that the petitioners were deprived of due process at their trial in the Illinois court, in that the court failed to instruct the jury to consider whether the state had proved a necessary element for conviction of felony murder under Illinois law.
 
 
 23
 At the time of petitioners' trial the Illinois felony murder rule appeared to be that non-actors are responsible for murder committed by a co-conspirator only where the conspirators agree to commit a forcible felony which by nature is dangerous to human life, and the murder is committed in the execution of that agreement.
 
 
 24
 The trial judge, apparently acting under this theory, determined that the mail theft engaged in by petitioners fell within the felony murder rule and therefore gave the following instructions, among others, to the jury:
 
 
 25
 The Court instructs the jury as a matter of law, that in this case to constitute the crime of murder * * * it is sufficient if the jury believe from the evidence beyond a reasonable doubt that the defendants and their co-conspirator combined to do an unlawful act, such as steal from the United States mails and that the deceased was killed by a co-conspirator in the attempt to execute such purpose. * * * if several persons conspired to do an unlawful act and death occurs in the prosecution of the common object, then all are alike guilty of homicide. * * * if two or more persons are engaged in the prosecution of a felony, the acts of each * * * are * * * binding upon all and all are alike responsible for the acts of each in the prosecution of such felony. * * * if you find from all the evidence and beyond a reasonable doubt that Allen Golson and William Perkins or either of them and George Wilson entered into a conspiracy to commit an unlawful act and that prior to the completion of the unlawful act contemplated by the conspiracy George Wilson shot and killed John Phillip McAuliffe then you should find the defendants, Allen Golson and William Perkins guilty of murder.
 
 
 26
 These instructions left only two questions for the jury: whether the parties had conspired to commit an unlawful act, and whether a murder took place during the commission of that act. The jury, presumably resolving these questions in favor of the State, found petitioners guilty.
 
 
 27
 On appeal to the Illinois Supreme Court petitioners argued that theft from the mails by stealth was not a forcible felony by nature dangerous to human life and that for this reason the felony murder doctrine could not be properly applied to their case.
 
 
 28
 The Illinois Supreme Court appeared to agree that theft from the mails by stealth is not a forcible felony, but went on to reject the idea that the felony murder doctrine applies only to certain classes of felonies. The court instead held that 'the test to be applied in determining whether the felony murder doctrine is applicable * * * is whether, under the facts of a particular case, it is contemplated that violence might be necessary to enable the conspirators to carry out their common purpose.'
 
 
 29
 The Supreme Court in applying the new rule to petitioners' case found there was sufficient evidence from which the jury could infer 'that the conspirators intended to forcibly resist any attempt to arrest them, either during the course of the crime or in an attempt to escape from the scene.' The court consequently found that petitioners' case fell within the test of felony murder and affirmed petitioners' convictions.
 
 
 30
 The part of the instruction before us, basis of petitioners' claim, is:
 
 
 31
 * * * it is sufficient if the jury believe from the evidence beyond a reasonable doubt that the defendants (petitioners) and their co-conspirators combined to do an unlawful act, such as to steal from the United States mails and that the deceased was killed by a co-conspirator in the attempt to execute such purpose.
 
 
 32
 It is plain that the element which the Illinois Supreme Court, in reviewing petitioners' case in People v. Golson, 32 Ill.2d 398, 207 N.E.2d 68, 73, stated was the test in felony murder was omitted from this virtual directory instruction.
 
 
 33
 The Illinois Supreme Court decided that the challenged instruction, when considered with the other instructions given, and in the light of the facts of the case, was not improper and did not mislead the jury, and its giving was not reversible error. The district court in denying petitioners habeas corpus relief justified the instruction on the same basis.
 
 
 34
 Neither the Illinois Supreme Court opinion nor the district court's memorandum sets forth the other instructions or states whether the cryptic reference to other instructions means that the instruction complained of was defective, but that the defect is supplied by the other instructions. In my view, the additional instructions, which I have set out, tend to aggravate the unfairness of the instruction complained of rather than to aid it. I think that the test of the defendants' guilt under the indictment was withdrawn from the jury, because under the instructions given petitioners could be convicted without proof that it was 'contemplated that violence might be necessary' to enable them to carry out their purpose of theft.
 
 
 35
 I agree that the jury could have reasonably inferred from the evidence that the necessary contemplation of violence was present in this case. But the State trial court never instructed the jury to consider that question, and the jury had no opportunity to draw the necessary inference.
 
 
 36
 The trier of fact under Illinois procedure accordingly did not determine whether the element of contemplation of violence, necessary for conviction under Illinois law, was proved beyond a reasonable doubt by the State. I think the due process clause of the Fourteenth Amendment requires that the trier of fact, designated by Illinois, decide in the first instance whether a necessary element of an offense has been proven beyond a reasonable doubt. Cf. Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350. An appellate court that has not heard the evidence or seen the witnesses can not, consistently with fundamental fairness, be allowed to make the initial factual determination that a criminal has been proven guilty by the State.
 
 
 37
 I would therefore remand this case to the district court with directions to grant the writ if the State did not, within a reasonable time, afford petitioners a new trial at which the jury could consider the proof as to all necessary elements of the crime charged.
 
 
 
 [1]
 One George Wilson, named as another participant in the said crimes, pleaded guilty and was sentenced to death. His conviction was affirmed in People v. Wilson, 29 Ill.2d 82, 193 N.E.2d 449 (1963)
 
 
 [1]
 Duncan v. State of Louisiana (May 20, 1968), 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. And, see Bloom v. State of Illinois (May 20, 1968), 391 U.S. 194 88 S.Ct. 1477, 20 L.Ed.2d 522
 
 
 [2]
 De Stefano v. Woods (June 17, 1968), 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308
 
 
 [3]
 (1946), 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350